# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROSALYN WITHERSPOON,**

      **Plaintiff,**

    v.                                           Civil action no. 1:05CV29
                                                    (Judge Broadwater)

**NORTH CENTRAL REGIONAL JAIL;**
**OFFICERS AT NORTH CENTRAL REGIONAL JAIL; and**
**D.O.C.,**

      **Defendants.**

## AMENDED REPORT AND RECOMMENDATION[1]

On February 18, 2005, the plaintiff, filed a *pro se* complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. On July 20, 2005, the Department of Corrections, by and through counsel, filed a Motion to Dismiss for Lack of Jurisdiction together with a supporting memorandum. On August 25, 2005, the defendants, North Central Regional Jail and Officers at the North Central Regional Jail, by and through counsel, filed a Motion to Dismiss or in the alternative Motion for Summary Judgment, also with a supporting memorandum.

On August 23, 2005, the undersigned issued an Order containing a <u>Roseboro</u> notice and advised the plaintiff that she had thirty (30) days following entry of the Order in which to file any opposition

---

[1]On January 23, 2006, the undersigned filed a Report and Recommendation in which it was recommended that the defendants' Motion to Dismiss(Doc. 25) be granted and this case be dismissed with prejudice. Inadvertently omitted, was a separate Motion to Dismiss filed by the Department of Corrections. (Doc. 16). Although the original Report and Recommendation contains a finding that the Department of Corrections is not subject to suit in a claim under 42 U.S.C. §1983, this Amended Report and Recommendation makes specific reference to the Department's Motion to avoid any confusion on the part of the parties or the Court.

explaining why her case should not be dismissed. As of the date of this Report and Recommendation, the plaintiff has filed no response.

This matter, is pending before me pursuant to the March 14, 2005, Order of Referral issued by the Honorable W. Craig Broadwater and standing Order No. 2.

## I. The Complaint

On March 7, 2004, at approximately 11:00 p.m., the plaintiff was moved from B-Pod Section #3 Cell #8 to Medical Cell M-6. Because one other inmate was already housed in Medical Cell M-6, the plaintiff alleges that she was going to be required to sleep on the floor. She further maintains that when she objected to this arrangement, several officers reiterated that she would have to sleep on the floor, which she describes as filthy dirty and urine covered. After ringing the bell, which she claims the correctional officers then turned off, she knocked on the cell door first with her hand and then with her heel. The officers eventually asked her to come out of the cell. The plaintiff claims that when she stepped out of the medical cell, approximately six to eight officers tackled her to the ground and began hitting her on her back, legs, arms, head, and then cuffed her hands behind her back. She maintains that after cuffing her hands, the officers continued kicking her and bouncing her head off the concrete floor. They then dragged her by her arms and threw her in a chair which they rolled through the medical facility to the "front of the place of holding by the phone booth". The plaintiff maintains that the correctional officers continued to hit her with their hands and fists on her back, shoulders, neck, head and legs for a period of ninety minutes to two hours. As a result of "being severely tortured", the plaintiff claims she suffered injuries to her shoulders, head, legs, back, arms, and wrists. She also maintains she saw five different doctors and had to have x-rays on two different days.

## II. The Defendants' Answer

On July 20, 2005, the defendant, Department of Corrections, filed a response to the complaint

in the form of a Motion to Dismiss arguing that it is a state agency and therefore not a person subject to suit under 42 U.S.C. § 1983. On August 5, 2005, the defendants, North Central Regional Jail and Officers at the North Central Regional Jail, filed a response to the complaint in the form of a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. In the motion, the defendants argue that: (1) the plaintiff was not subjected to cruel and unusual punishment; (2) qualified good faith immunity shields defendants from liability in their individual capacity; (3) plaintiff's claim is barred by the Eleventh Amendment to the United States Constitution and the Will Doctrine; and (4) defendant, North Central Regional Jail, is not a person subject to suit under 42 U.S.C. § 1983.

**III. Standard of Review**

A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits, and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

B. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. , supra, at 323. If the Court finds that the moving party has satisfied the initial burden, the non-moving party must go beyond the pleading and make sufficient showing of fact presenting a genuine issue for trial. Id. at 325. Once the "moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, supra, at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248.

## IV.  Analysis

### A.  Defendant Officers at North Central Regional Jail

In their motion to dismiss or for summary judgment, the defendants argue that the plaintiff's 1983 claim should be dismissed because she was not subjected to cruel and unusual punishment.

4

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The use of excessive force may constitute cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force case has two prongs: an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (en banc), *cert. Denied*, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). According to the Fourth Circuit Court of Appeals, "absent the most extraordinary circumstances" an individual who suffers only *de minimis* pain or injuries cannot prevail on an Eighth Amendment excessive force claim. Norman, supra at 1263. However, if the force used is "repugnant to the conscience of mankind," i.e., "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim under the subjective prong even if the injuries sustained are *de minimis.* Id. at 1263. Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, supra, at 9; Williams v. Benjamin, 77 F.3d 756, 761 (4th cir. 1996).

Analyzing the plaintiff's complaint of excessive force under the objective prong establishes that she suffered no more than *de minimis* injuries. Attached to the defendant's Motion is an Event Synopsis from Primecare Medical Inc., at the Northern Regional Jail. (Doc. 25-8) This synopsis reveals that the plaintiff was initially transported to the medical wing at 11:00 p.m on March 7, 2004. At 11:30 p.m. she was placed in a restraint chair . She was immediately assessed by M. Mahaney, L.P.N., who found that the plaintiff had good capillary refill, positive pedal pulses, pulse 102 bpm, and oxygen saturation of 98%. At 12:30 a.m. on March 8, 2004, Nurse Mahaney again checked on the plaintiff in the restraint chair. Because she was flushed and diaphoretic, Nurse

5

Mahaney requested that the chest and wrist restraints be loosened slightly. The plaintiff was then removed from the restraint chair. At 1:10 a.m., two hours after the incident began, the plaintiff's color was normal, respirations were stable, and her blood pressure was 180/104. Her only complaint was leg pain, but she had full range of motion and there was no inflammation. At 1:28 a.m., hypertension protocol was implemented due to her high blood pressure. By 2:35 a.m., the plaintiff's blood pressure was down to 138/88, her pulse was 72 bpm, respirations were 24 per minute, and her oxygen saturation was 99%. At that time a complete assessment of the plaintiff was done by M. Seibel, L.P.N., who found that the plaintiff's pupils were equal and reactive to light, she was alert and oriented, her lung sounds were clear with full chest expansion. There was bruising noted to the inner biceps of both arms, as well as bruising and swelling at the inner, right wrist and between the first and second knuckles. The plaintiff had full range of motion in both arms but grimaced with pain when making a fist with the right hand. A red area with no bruising was noted on the left wrist. The plaintiff had the same complaints of pain in the right knee that she had before the altercation, but there was no bruising, and she was able to bear weight on her right knee and walk steadily. There was a also a small amount of swelling and light bruising to the right jaw below the ear lobe, but she had full range of motion of her jaw. An x-ray of the right hand and wrist was ordered, and the results obtained on March 9, 2004, showed no fractures to the right hand or wrist. On March 10, 2004 at 3:00 p.m., the plaintiff was seen by Dr. Katiny, to whom the plaintiff complained of right knee and lower back pain. An x-ray of the right knee and the spine were ordered and ibuprofen 800 mg twice a day for pain and inflammation was prescribed. On March 11, 2004, the x-ray results were phoned in reporting that there was no acute disease found in the right knee or spine.

Although the plaintiff suffered only *de minimis* pain and/or injuries, she might still prevail

on an Eighth Amendment excessive force claim under the subjective prong of the Court's mandatory two-part inquiry. When evaluating the use of force by correctional officers, the ultimate question is whether the use of physical force was undertaken in a good faith effort for legitimate needs, or whether the force was used with the intent of causing harm. Whitley v. Albers, 475 U.S. 312 (1986); Hudson v. McMillian, 503 U.S. 1 (1992). Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, supra at 9; Williams v. Benjamin, 77 F.3d 756, 761 (4th cir. 1996).

Here, there is no dispute that the correctional officers used force to restrain the plaintiff. In his affidavit, dated July 26, 2005, Sergeant George Dennison recounts that he went to the plaintiff's medical cell shortly before midnight on March 7, 2004, after efforts by two other correctional officers to calm her down by talking with her failed. He directed that the door be opened and attempted to escort the plaintiff out of the cell. When the plaintiff attempted to jerk away, he applied a knee strike to the common peroneal area of her leg. Thereafter, he was able to use a straight-arm bar take down and placed the plaintiff on the floor, face down. He then applied handcuffs, double locked them and attempted to help the plaintiff to her feet. When the plaintiff indicated she could not walk, Sergeant Dennison and three (3) other correctional officers placed the plaintiff in a restraining chair. (Doc. 25-10).

In his affidavit, dated July 26, 2005, Correctional Officer II Jeremy Mark Laughlin indicates that he was the booking officer on March 8, 2005, for the shift beginning at 11:45 p.m. He notes that when he entered booking, he saw the plaintiff in the restraint chair screaming, thrashing out violently, and having partially removed her left leg from the restraint chair, kicking it toward any person who came within reach. With the assistance of two other officers, he attempted to again secure her left leg. The plaintiff was physically combative and violent and attempted to kick the

7

officers. To gain control, Officer Laughlin delivered one knee strike to the plaintiff's left common peroneal. When the plaintiff did not respond to this technique, and continued to kick at the officers, he delivered one palm heel strike to the left common peroneal. When this was again ineffective in subduing the plaintiff, the officer standing behind the plaintiff delivered a super scapula blow. This was effective and allowed the officers to secure the plaintiff's left leg in the restraint chair. Officer Laughlin maintains that the entire incident of regaining control of the plaintiff took five (5) to ten (10) minutes, and that upon Nurse Seibel's recommendation, the plaintiff was removed from the restraint chair after fifteen (15) minutes. (Doc. 25-11)

No disputes of material fact exist about the events occurring on or about March 7, 2004. The correctional officers involved all believed that the use of force was necessary to maintain and restore discipline. There has been no showing that the actions of the officers were done maliciously and sadistically to cause harm. The use of force lasted only as long as necessary to restrain the plaintiff and gain control over her behavior, and she received immediate medical attention as her condition warranted. There has been no showing that the actions of the correctional officers "evidenced such wantonness with respect the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."[2] Therefore, the defendant officers at the **North** Central Regional Jail are entitled to summary judgment.

**B.  Defendants North Central Regional Jail and Department of Corrections**

Claims under 42 U.S.C. § 1983 are directed at "persons." The North Central Regional Jail and the Department of Corrections are not proper defendants because neither is a person within the meaning of 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished).

---

[2] Whitley v. Albers, 475 U.S. 312, 321 (1986).

Therefore the defendants North Central Regional Jail and Department of Corrections must be dismissed from this action.

## V.  RECOMMENDATION

For the reasons set forth in this Order, it is recommended that Defendant Department of Correction's Motion to Dismiss (Doc. 16) be **GRANTED** and, as well, the Defendants', North Central Regional Jail and Officers at North Central Regional Jail,  Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 25-1) be **GRANTED** and this case be **DISMISSED.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Amended Report and Recommendation to the *pro se* plaintiff and any counsel of record.

Dated: January 26, 2006

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE